UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LESLIE McGINNIS,

    Plaintiff,

v.

DR. HUQ, LIEUTENANT BATES,
SERGEANT CARCARAS, SHERIFF
SHEEN, and SHERIFF GRABOWSKI,

    Defendants.

_____/

Civil Action No. 16-13461
Honorable Thomas L. Ludington
Magistrate Judge David R. Grand

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [48]**

Before the Court is a Motion for Summary Judgment filed by Defendants Dr. Rubab Huq, Lieutenant Bates, Sergeant Carcaras, Sheriff Chahine,[1] and Sheriff Grabowski (collectively "Defendants") on December 12, 2017. (Doc. #48). Plaintiff Leslie McGinnis ("McGinnis") filed a response to this motion on March 14, 2018 (Doc. #63)[2], and Defendants filed a reply on March 23, 2018 (Doc. #65).

An Order of Reference was entered on January 3, 2017, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (Doc. #9). Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. L.R. 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record and declines to order a hearing at this time.

---

[1] In the complaint, Sheriff Chahine was improperly referred to as "Sheriff Sheen." (Doc. #1).

[2] Subsequently, McGinnis sent a letter to the Court, in which he indicated that he "inadvertently had left out" certain arguments in response to Defendants' motion for summary judgment." (Doc. #67 at 1). Although procedurally improper, given McGinnis' *pro se* status, the Court will consider the arguments set forth in that letter (Doc. #67), as well as those contained in McGinnis' response brief (Doc. #63), when ruling on the instant motion.

**I.     RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment (**Doc. #48**) be **GRANTED**.

**II.    REPORT**

    **A.     Factual Background**

On or about June 10, 2013, McGinnis was arrested for unlawful imprisonment and unarmed robbery in Trenton, Michigan, and was transferred to the Wayne County Jail (the "Jail") as a pre-trial detainee.  (Doc. #1 at 4; Doc. #48 at Ex. 2).  His complaint in the instant case arises out of incidents that occurred while he was confined at the Jail.

McGinnis first complains about the type of medication he was provided at the Jail by Dr. Huq.  At his deposition, McGinnis testified that, before he was incarcerated, he was receiving his prescriptions – "all different kinds of stuff" – from a Veterans Affairs ("VA") medical facility. (Doc. #48 at Ex. 1, p. 105).  Jail medical records indicate that McGinnis first saw Dr. Huq on June 24, 2013, at which time he complained of "chronic pain" from bone spurs and a compression fracture. (*Id.* at Ex. 3, pp. 6, 14-15).  These records further indicate that McGinnis "want[ed] Vicodin"; however, Dr. Huq instead prescribed Motrin and Gabapentin for pain. (*Id.*). Essentially, then, McGinnis asserts that Dr. Huq's failure to prescribe him the medication he had been taking prior to his incarceration, at the dosage he received from the VA ("four Vicodins a day"), constitutes deliberate indifference to a serious medical need.  (*Id.* at Ex. 1, pp. 127-29).

McGinnis also pleads an excessive force claim against Sheriff Chahine, Sheriff Grabowski, Sergeant Carcaras, and Lieutenant Bates (collectively the "Officer Defendants"). (Doc. #1).  Specifically, McGinnis alleges that, early in the morning on August 22, 2013, he was scheduled for a court appearance.  McGinnis claims that when Sheriff Chahine woke him up for

court, he told him he "could not go as he had slept wrong and his back had somehow frozen up."

(Doc. #1 at 5). At his deposition, McGinnis elaborated, testifying as follows:

> I said, I can't go. I slept wrong. My back is locked up. I can't move. You know. If they want me to go, they are going to have to come and pick me up and put me on a gurney or in a wheelchair and take me over there.

(Doc. #48 at Ex. 1, p. 82). McGinnis further alleges that Sheriff Chahine then grabbed him and removed him from his bed, and – with Sheriff Grabowski's help – placed him on a gurney and transported him to a holding cell. In detail, McGinnis asserts that:

> Defendant Officer [Chahine] threw [McGinnis'] covers back and grabbed his shirt sleeve and inserted his hand inside the sleeve and twisted it and dragged [McGinnis] off of his bed causing his tailbone to be banged against the steel bed frame causing [McGinnis] to yell out in excruciating pain, and then [McGinnis'] feet hit the floor causing him more excruciating pain when his tailbone hit the floor. At that time Defendant Grabowski entered the cell and picked [McGinnis'] legs up and together, Defendants [Chahine] and Grabowski carried [McGinnis] through the cell opening, but doing so they twisted [McGinnis] in such a way that his left leg was going the wrong way when he went through the doorway of the cell and [McGinnis] yelled out in excruciating pain as it felt like his leg had broken ….

(Doc. #1 at 5-6; *see also* Doc. #48 at Ex. 1, pp. 85-87).[3] McGinnis then claims that, after some period of time, Sheriffs Chahine and Grabowski wheeled him – while still on the gurney – into the elevator and subsequently "parked [him] in front of the Medical Department." (Doc. #48 at Ex. 1, p. 97). He claims he "passed out" and was never examined by medical personnel (because he "couldn't move to go in" to the medical department), but, rather, was transported back to his cell where he discovered a "big ass bruise" on the inside of his left thigh. (*Id.* at Ex. 1, pp. 98-101).

---

[3] At his deposition, McGinnis admitted that Sergeant Carcaras and Lieutenant Bates never actually touched him; rather, he asserts that they "knew about" Sheriffs Chahine's and Grabowski's alleged use of excessive force and "didn't do something to stop it." (Doc. #48 at Ex. 1, pp. 96-97).

McGinnis' medical records establish that, subsequently, on October 18, 2013, he "was turning around then tripped and landed directly onto his [left] hip." (*Id.* at Ex. 4, p. 1). Although none of the defendants touched McGinnis on that day, and his fall occurred nearly *two months* after the alleged use of excessive force described above, McGinnis seems to suggest in his complaint that the October injury (a broken left femur) occurred "due to the way he was banged around about a month previously" (i.e., on August 22, 2013). (Doc. #1 at 7). Indeed, at his deposition, McGinnis speculated that, "Officer [Chahine] and Grabowski's actions, when they jammed [him] through the door … [his] leg got twisted in there and banged up[,]" causing what he believes to have been "a small fracture or whatever" in his left leg. (Doc. #48 at Ex. 1, pp. 111-12, 122). McGinnis claims, then, that Sheriffs Chahine's and Grabowski's actions in August 2013 resulted in "the break later from the fracture."[4] (*Id.* at Ex. 1, p. 123).

McGinnis now brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging that Dr. Huq's failure to provide the same medication he was receiving from the VA prior to his incarceration constitutes deliberate indifference to a serious medical need in violation of the Eighth Amendment. Additionally, McGinnis alleges that the actions of the Officer Defendants on August 22, 2013, violated his constitutional right to be free of excessive force.

In their motion for summary judgment, Defendants argue that McGinnis' claims are barred by the applicable statutes of limitations. (Doc. #48 at 15-17). Additionally, Defendants argue that summary judgment is warranted on the merits of these claims, as well as on qualified immunity grounds. (*Id.* at 17-26). Although the Court does not find all of Defendants'

---

[4] McGinnis was transported to the hospital for surgery on October 18, 2013, and subsequently released to the Jail, where he was housed on a medical ward and given his prescriptions, per the hospital's recommendations. (Doc. #48 at Ex. 3, Ex. 4). He does not allege any wrongdoing on the part of Defendants with respect to the treatment of this October 2013 broken bone.

4

arguments persuasive, it nevertheless finds that summary judgment is warranted on both of McGinnis' claims.

### B.     Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

### C. Analysis

#### 1. McGinnis' Deliberate Indifference Claim is Time-Barred

Defendants first argue that McGinnis' deliberate indifference claim against Dr. Huq, brought pursuant to 42 U.S.C. § 1983, is barred by the applicable statute of limitations. (Doc. #48 at 15-17). Because Congress did not specifically adopt a statute of limitations governing § 1983 actions, "federal courts must borrow the statute of limitations governing personal injury actions in the state in which the section 1983 action was brought." *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003). The Sixth Circuit has held that the "appropriate statute of limitations to be borrowed for § 1983 actions arising in Michigan is the state's three-year limitations period for personal injury claims." *Drake v. City of Detroit, Michigan*, 266 F. App'x 444, 448 (6th Cir. 2008) (citing M.C.L. § 600.5805(10)).

Although the statute of limitations is governed by state law, the question of when a federal civil rights claim accrues remains one of federal law. *See Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003). As the Sixth Circuit has recognized, "Under federal law as developed in this Circuit, [a cause of action accrues and] the statute of limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996) (citing *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991)).

Defendants contend that, applying these standards, McGinnis' Eighth Amendment claim against Dr. Huq is barred by the applicable three-year statute of limitations. (Doc. #48 at 15-17). As set forth above, this claim arises out of McGinnis' appointment with Dr. Huq in the Jail on June 24, 2013. (*Id.* at Ex. 3, pp. 14-15). At that time, McGinnis complained of pain from bone spurs and a compression fracture. (*Id.*). He told Dr. Huq that he "want[ed] Vicodin" – apparently because he had been receiving "four Vicodins a day" from the VA prior to his

incarceration – and he alleges that Dr. Huq's decision to prescribe him only Motrin and Gabapentin constitutes deliberate indifference to a serious medical need. (*Id.* at Ex. 1, pp. 127-29; Ex. 3, pp. 14-15). It is clear, however, that this claim must have been brought on or before June 24, 2016, *i.e.*, within three years of the visit at issue, on June 24, 2013. *See Drake,* 266 F. App'x at 448. Because McGinnis did not file his complaint until September 20, 2016 (Doc. #1 at 13), this claim is barred by the applicable statute of limitations.[5]

In his response to Defendants' motion, McGinnis seeks to salvage his deliberate indifference claim by asserting – in conclusory fashion – that his case "falls under the Federal 'Doctrine of Continuing Wrong Violations Doctrine'[.]" (Doc. #63 at 9). The continuing violation theory "allows the court[] to consider as timely all relevant violations including those that would otherwise be time[-]barred …." *Bruce v. Corr. Med. Servs., Inc.*, 389 F. App'x 462, 466 (6th Cir. 2010) (internal quotations omitted). "Actual actions by [medical providers] of refusing medical care represent discrete unlawful acts (beyond passive inaction) that trigger the statute of limitations." *Id.* at 466-67. But, "[p]assive inaction does not support a continuing violation theory." *Id.* at 466 (internal quotations omitted). Here, though, the only "continuing

---

[5] Moreover, to the extent the Court considers McGinnis' vague assertion that Dr. Huq was deliberately indifferent to a serious medical need when she failed to place him on "the Medical wing for medical people" (Doc. #48 at Ex. 1, p. 125), it is clear that such claim is also barred by the statute of limitations. Again, as set forth above, Dr. Huq examined McGinnis on June 24, 2013; thus, even if the Court accepts as true McGinnis' allegations that, at that time, Dr. Huq was deliberately indifferent in failing to house him in a different section of the Jail, any claim arising out of this action is also time-barred. *See Drake*, 266 F. App'x at 448. The same is true of McGinnis' allegation that Dr. Huq denied him the use of a back brace during his incarceration at the Jail. Specifically, McGinnis' medical records indicate that, on September 12, 2013, Dr. Huq reviewed the results of an x-ray of his lumbar spine. (Doc. #48 at Ex. 3, p. 6). At that time, she indicated in McGinnis' medical record: "WILL NOT GIVE BRACE – KEEP IN PERSONAL PROPERTY – [PATIENT] MAY HAVE BRACE AFTER [DISCHARGE] FROM [JAIL]." (*Id.*). Thus, even assuming that McGinnis has adequately pled a deliberate indifference claim based on Dr. Huq's failure to provide him with his back brace, any such claim is also time-barred, as McGinnis' complaint was filed more than three years after Dr. Huq made this determination.

violations" at issue consist of nothing more than Dr. Huq's alleged passive inaction (in failing to correct or modify prior decisions to decline to prescribe Vicodin, to place McGinnis in a non-medical ward, and to deny his request for a back brace). Thus, the continuing violation doctrine does not save McGinnis' deliberate indifference claim, and summary judgment is warranted on statute of limitations grounds.[6]

> 2. *Summary Judgment is Warranted on McGinnis' Excessive Force Claim*

McGinnis also alleges that the Officer Defendants violated his constitutional right to be free of excessive force, when removing him from his cell for a court appearance on August 22, 2013. (Doc. #1 at 6; Doc. #48 at Ex. 1, pp. 83-87). In their motion, Defendants argue that summary judgment is warranted on the merits of this claim.[7] (Doc. #48 at 22-25).

---

[6] Moreover, even if the Court were to consider the merits of McGinnis' Eighth Amendment claim against Dr. Huq, it does not survive summary judgment. It is clear that mere differences of opinion or disagreements between a prisoner and prison medical staff over the kinds of treatment a prisoner needs do not rise to the level of deliberate indifference. *See Umbarger v. Corr. Med. Servs.*, 93 F. App'x 734, 736 (6th Cir. 2004). Courts distinguish between "cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Alspaugh v. McConnell,* 643 F.3d 162, 169 (6th Cir. 2011) (internal quotations omitted). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Here, where McGinnis' claims against Dr. Huq are that she "put [him] on the wrong floor" and prescribed Motrin and Gabapentin (rather than Vicodin), his claims amount to nothing more than a difference in judgment, which do not rise to the level of an Eighth Amendment violation.

[7] Defendants also argue that McGinnis' excessive force claim, which arises out of the incident that occurred in the Jail on August 22, 2013, is barred by the three-year statute of limitations. (Doc. #48 at 15-17). At first blush, this argument has facial merit, as this claim was not brought on or before August 22, 2016. *See Drake,* 266 F. App'x at 448. In response to Defendants' argument, however, McGinnis contends that the statute of limitations as to his *excessive force claim* was tolled while he exhausted his administrative remedies. (Doc. #63 at 9-10, 37). He claims he filed an "excessive force grievance" regarding the Officer Defendants' alleged use of excessive force on August 22, 2013, and did not receive any reply whatsoever until June 10, 2014, meaning that the statute of limitations as to this claim was tolled for at least this nine-month period. (*Id.*). Defendants do not dispute McGinnis' assertions in this respect or otherwise rebut his tolling argument. Thus, at the summary judgment stage, where the Court must consider

8

Though McGinnis references the Fourth, Eighth, and Fourteenth Amendments at various points in his filings, it is clear that it is the Due Process Clause of the Fourteenth Amendment that provides protections against excessive force to pre-trial detainees such as McGinnis. *See Coley v. Lucas Cty., Ohio*, 799 F.3d 530, 538 (6th Cir. 2015). To establish an excessive force claim under the Fourteenth Amendment, a plaintiff must show that "the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). A court "cannot apply this standard mechanically"; rather, "objective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). As the *Kingsley* court further explained:

> A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. [] A court must also account for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security."

*Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)). In considering whether the force used was objectively reasonable, courts should consider: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. *See id.* Fundamentally, the officer's use of force may not amount to punishment or be gratuitous. *See O'Hair v. Winchester Police Dep't*, 2017 WL 7240652, at *2 (6th Cir. Oct. 18, 2017) (citing

---

the evidence in the light most favorable to the non-moving party, McGinnis has created a genuine issue of material fact as to whether his excessive force claim is barred by the statute of limitations. *See Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000) (statute of limitations "tolled for the period during which [the plaintiff's] available state remedies were being exhausted").

cases).

Analyzing the facts of this case in light of these legal principles, summary judgment is warranted in favor of the Officer Defendants on McGinnis' excessive force claim. As set forth above, the Court must determine whether the force used was objectively unreasonable from the perspective of a reasonable officer on the scene, considering what Sheriffs Chahine and Grabowski "knew at the time and accounting for the legitimate interests stemming from the need to manage the facility to preserve internal order, discipline, and institutional security." *Labadie v. Mitchell*, 2017 WL 279739, at *4 (W.D. Mich. Jan. 23, 2017). Considering first the need for the use of force and the amount of force used, as well as the officers' efforts to temper this force, these factors weigh in Defendants' favor. On the date in question, the Officer Defendants were charged with transporting McGinnis from his cell to the courthouse for a scheduled court appearance. By McGinnis' own admission, when Sheriffs Chahine and Grabowski asked him to get out of bed, he refused, complaining of back stiffness, and told them "they [we]re going to have to come and pick [him] up and put [him] on a gurney or in a wheelchair and take [him] over there." (Doc. #48 at Ex. 1, p. 82). Indeed, McGinnis testified at his deposition that he made this statement repeatedly (*Id.* at Ex. 1, pp. 82, 83, 84), leaving Sheriffs Chahine and Grabowski with no doubt that, if they wanted to fulfill their duties in transporting McGinnis to court, they would need to physically remove him from his cell and place him on a gurney. Thus, by McGinnis' own admission, there was a need for the officers to use some force; and, indeed, Sheriffs Chahine and Grabowski did just that, picking McGinnis up under his arms and by his legs and carrying him out to a gurney in the hallway. (*Id.* at Ex. 1, p. 97). Sheriffs Chahine and Grabowski did not use any additional force – such as handcuffs or a taser – in an effort to physically move McGinnis to the gurney, which further suggests that the force used was not

objectively unreasonable.

Additionally, according to McGinnis' own testimony, it appears that any injuries he suffered were both unintentionally inflicted and minor in nature. As set forth above, McGinnis claims that, after he repeatedly told the officers that they were going to have to pick him up and put him on a gurney, Sheriff Chahine grabbed him by the shirtsleeve, removed him from his bed, and placed him on a gurney for transportation to a holding cell (Doc. #1 at 6-7). McGinnis alleges that, in the course of doing so, Sheriff Chahine caused "his tailbone to be banged against the steel bed frame"; caused his feet to "hit the floor"; and twisted his left leg while attempting to carry him out of his cell. (Doc. #1 at 6-7; *see also* Doc. #48 at Ex. 1, pp. 85-87). At his deposition, however, in further elaborating on the sequence of events at issue, McGinnis implicitly conceded that any injuries he suffered in this respect were at worst negligently inflicted, saying: "What I am claiming is that Officer [Chahine] and Grabowski's actions, when they jammed me through the door, trying to go one way and put me through, and turned too quick, my leg got twisted in there and banged up." (*Id.* at Ex. 1, p. 122). Indeed, McGinnis described the incident in additional detail, explaining that, while Sheriff Chahine was carrying him by his arms and Grabowski was carrying his feet:

> They took me through the doorway. One was trying to go this way, you know, like you go through the door, turn. This guy was trying to go like, shoo, at an angle. He tried to angle through. In other words, when he – just as soon as he got me through, he was trying to turn to go that way, going off, still going straight.
>
> \* \* \*
>
> They took me out. And Grabowski was turning quicker than [Chahine] was going.
>
> \* \* \*
>
> So Grabowski turned, sort of like – as soon as you go through the door, boom, you turn. Well, when they did, my leg went up against the door.

11

(*Id.* at Ex. 1, p. 86). Thus, even taking the facts in the light most favorable to McGinnis, it appears that, at most, Sheriff Chahine negligently or inadvertently caused McGinnis' body to bump against the gurney and/or the cell door during the course of attempting to transport him to court, rather than purposely or knowingly applying force in this respect.

Moreover, the extent of McGinnis' actual injuries also belies a conclusion that the amount of force used was objectively unreasonable. McGinnis' medical records indicate that he was examined on August 22, 2013, at which time he complained only of an injury to his tailbone. (*Id.* at Ex. 3, p. 6). He was able to turn from his right side to his left side, however, and he had nothing more than a bruise on his upper right arm. (*Id.*). Indeed, in his response to Defendants' motion for summary judgment, McGinnis essentially concedes that any injuries he suffered as a result of the alleged use of excessive force on August 22, 2013, were *de minimis* in nature. (Doc. #63 at 9 (McGinnis' excessive force claim "could not have begun to accrue until at least October 18, 2013, not the August 22, 2013 date as defendants allege/claim, as that's when plaintiff suffered 'more than a de minimus [sic] injury' ….") (emphasis in original)). Thus, this factor too supports a conclusion that the force exerted was not objectively unreasonable.[8]

In summary, analysis of the relevant factors establishes that in light of McGinnis' repeated refusal to get out of the bed, as well as his insistence that the Officer Defendants place him on a gurney for transportation to court, Sheriffs Chahine's and Grabowski's use of force was

---

[8] McGinnis also seems to claim that the broken bone he suffered when he tripped and fell in October 2013 is somehow related to "the way he was banged around" two months earlier on August 22, 2013. (Doc. #1 at 7). But, aside from his own unsupported speculation that Sheriffs Chahine's and Grabowski's actions caused "a small fracture or whatever" in his left leg (Doc. #48 at Ex. 1, p. 112), McGinnis has absolutely no evidence that this is the case. Indeed, on August 22, 2013, McGinnis complained of an injury to his "spine" or "tail bone," not to his left leg. (*Id.* at Ex. 3, pp. 11, 12). Thus, McGinnis has not created a genuine issue of material fact as to whether his broken left femur, suffered when he tripped and fell in October 2013, was the result of the Officer Defendants' alleged use of excessive force two months earlier.

objectively reasonable under the circumstances. While it is unfortunate that McGinnis might have suffered minor bumps or bruises as he was jostled during this process, he has failed to establish a genuine issue of material fact as to whether Sheriffs Chahine and Grabowski employed excessive force in this case,[9] and summary judgment is warranted in the Officer Defendants' favor on this claim.[10]

## III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment (**Doc. #48**) be **GRANTED**.

Dated: April 30, 2018           s/David R. Grand
Ann Arbor, Michigan          DAVID R. GRAND
         United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and

---

[9] Moreover, it is clear that summary judgment is warranted on McGinnis' excessive force claims against Lieutenant Bates and Sergeant Carcaras. To hold an individual police officer liable for the use of excessive force in violation of the Fourteenth Amendment, a plaintiff must show that the officer: "(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) (internal quotations omitted). Here, McGinnis admits that neither Lieutenant Bates nor Sergeant Carcaras ever touched him, alleging only that they "did nothing to stop [him] from being abused by Defendants [Chahine] and Grabowski." (Doc. #1 at 7; Doc. #48 at Ex. 1, p. 96). But, because the Court finds that Sheriffs Chahine and Grabowski did not use excessive force in removing McGinnis from his cell and placing him on a gurney, there can be no liability on the part of Lieutenant Bates or Sergeant Carcaras for failure to supervise or protect. *See Ziolkowski v. City of Taylor*, 2013 WL 3872507, at *12 (E.D. Mich. July 24, 2013). As such, summary judgment is also warranted on McGinnis' excessive force claims against these two defendants.

[10] Defendants also argue that they are entitled to summary judgment on qualified immunity grounds. (Doc. #48 at 25-26). Determining the applicability of qualified immunity requires a two-step inquiry into whether the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Here, where McGinnis has failed to establish a genuine issue of material fact as to a constitutional violation occurred, the Court need not reach Defendants' qualified immunity arguments.

Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2). A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 30, 2018.

s/Eddrey O. Butts<br>
EDDREY O. BUTTS<br>
Case Manager